The State, ex rel. Carter, v. Board of Public Lands and Buildings.

THE STATE, EX REL. JAMES O. CARTER, v. THE BOARD OF PUBLIC LANDS AND BUILDINGS.

1. **Board of Public Lands and Buildings:** POWERS. The board of public lands and buildings are the successors of the board of prison inspectors; but they possess no power except such as is conferred by the constitution of 1875, or by statute. They possess no authority to appoint or remove the physician of the penitentiary, such power being vested in the governor.

2. **Board of Prison Inspectors.** The relator was appointed physician by the board of prison inspectors, and was to hold his office during the pleasure of said board. *Held*, That when the board ceased to exist by limitation of the constitution, the appointment of the relator terminated.

3. **Officers:** WHEN THEIR POWERS CEASE. As a general rule, where the term of a particular officer is fixed by statute, his power ceases with the expiration of that term, unless there is a provision that he shall hold his office until his successor is elected and qualified. But where the practice has been for officers to hold over until their successors are elected and qualified, their acts are valid.

4. ——: HOLDING BY APPOINTMENT. An appointment, unlimited as to its term, continues in force until revoked, or the authority by which it was made ceases to exist.

5. ——: AUTHORITY CEASES WHEN APPOINTING POWER IS ABOL-ISHED. The death or removal of members of a particular board who are vested with the appointing power, their places being filled with others, does not annul appointments already made,

because the board continues to exist, with full power to make or revoke appointments. But upon the abolition of the board, without a saving clause as to its appointments, the authority of those persons who merely hold office during its pleasure ceases.

ORIGINAL application for mandamus.

*Lamb, Billingsley & Lambertson*, for the relator.

The constitution, by abolishing the inspectors and creating the board of public lands and buildings as their successors, did not annul the appointments made by the board of inspectors in pursuance of the powers conferred upon them by law. Const., secs. 5, 14, Art. XVI. The physician of the penitentiary is expressly by statute made an officer. Gen. Stat., 1036, 1042. He was an officer at the date of the adoption of the new constitution, and was an officer of state, performing important public functions, receiving a stated salary, fixed by the legislative appropriations of the state. Laws, 1877, 237–38. Laws, 1875, 225. The above sections of the constitution, together with section 5, page 1023, General Statutes, clearly indicate that all officers created by the statutes of this state, hold until their successors are selected and qualified. The later decisions of the courts support this theory of the tenure of office. Dillon on Municipal Corporations, sec. 158. *Overseers of Poor v. Sears*, 22 Pick., 122, 130. *People v. Fairbury*, 51 Ill., 149. *Stratton v. Oulton*, 28 Cal., 44. *McCall v. Byram*, 6 Conn., 428. *Cordiell v. Frizee*, 1 Nevada, 130. *School District v. Atherton*, 12 Metcalf, 105. *People v. Stratton*, 28 Cal., 382. *State v. Wells*, 8 Nevada, 105. *Heys v. Walters*, 46 Ga., 387.

MAXWELL, J.

The relator sets forth in his application that on the ninth day of May, 1873, the board of prison inspectors,

pursuant to the laws of the state, duly appointed and commissioned him physician of the penitentiary of the state; that he was to hold said office, with all the rights, privileges, and emoluments thereof until his appointment and commission should be revoked according to law; that he entered upon the duties of his office on the first day of June, 1873, and continued to discharge the same until the sixteenth day of March, 1877, when the defendants, without cause, and without authority of law, passed an order excluding the relator from said office, and instructed the warden of the penitentiary to exclude him from the performance of the duties of said office, and not to recognize him as physician of the penitentiary; and that said order is still in force, and said defendants still exclude the relator from exercising the duties of said office; that said relator has never been removed from said office, nor his appointment or commission been revoked; that the relator has from time to time repeatedly insisted and demanded from said defendants permission to exercise and discharge the duties of said office, but that they keep him out of the same, and wrongfully deprive him of the rights, privileges, and franchises thereof. Wherefore the relator prays that a writ of mandamus may issue against the said defendants, commanding them to rescind and revoke their said illegal order to the warden of the penitentiary, and to permit the relator to exercise and discharge the duties of the office of prison physician, and commanding them to restore the relator to the exercise and enjoyment of the duties of said office.

Section 17, of chapter 76, of the General Statutes, provides that the chaplain and physician of the penitentiary shall be appointed by the board of prison inspectors.

Under the provisions of the constitution of 1875, the prison inspectors remained in office until the first Thurs-

day after the first Tuesday in January, 1877, when their office terminated.

Section 19, of article V, of the constitution of 1875, provides that "the commissioner of public lands and buildings, the secretary of state, treasurer, and attorney-general, shall form a board, which shall have general supervision and control of all buildings, grounds, and lands of the state, the state prison, asylums, and all other institutions thereof, except those for educational purposes; and shall perform such duties, and be subject to such rules and regulations as may be prescribed by law."

The act approved February 13, 1877, establishing a board of public lands and buildings, provides that "the board shall have power, under the restrictions of the act, to direct the general management of all of said institutions, and be responsible for the proper disbursement of the funds appropriated for their maintenance, and shall have reviewing power over the acts of the officers of such institutions, and shall, on the part of the state, at regular meetings as hereafter directed, audit all accounts of such officers," etc.

Section 7 provides that : "It shall be the duty of the board to take cognizance of all charges or complaints made against said public officers, and at a regular meeting to give an impartial hearing to such charges and the defense against them, if any, and report the charges, evidence, and their conclusions in the matter, to the governor, within six days after the determination of such investigation."

Section 10, article V, of the constitution of 1875, provides that : "The governor shall nominate, and by and with the consent of the senate (expressed by a majority of all the senators elected, voting by yeas and nays), appoint all officers whose offices are established by this constitution, or which may be created by law, and whose

appointment or election is not by law herein provided for."

The board of public lands and buildings are the successors of the board of prison inspectors, but they possess no power except such as is conferred by the constitution of 1875, or by statute. They possess no power to appoint or remove the physician of the penitentiary, such power being vested in the governor.

The relator claims to have been appointed prison physician by the board of prison inspectors, and was to hold his office during the pleasure of said board. The board of prison inspectors ceased to exist, by limitation of the constitution, in January, 1877. By what authority then does the relator claim the office in question? The appointment being held merely at the pleasure of the board of inspectors, was revoked when the board ceased to exist.

Story, in his work on agency, section 469, says: "It follows from what has been said, that when the power of an agent is revoked or terminated, that also of any substitute appointed by and under him, it being a dependent power, is ordinarily also revoked."

In this case the board of public lands and buildings had no authority to continue the relator in office. His authority, therefore, to discharge the duties of the office of prison physician was determined when the board of prison inspectors ceased to exist.

The relator not being entitled to the office, the application for the writ must be denied.

WRIT DENIED.

Upon an application for leave to file a motion for a re-hearing, *Lamb, Billingsley & Lambertson*, for relator, contended:

The rule of agency upon which this decision is based is, that when the power of an agent is revoked or termi-

nated, that also of any substitute appointed by and under him, it being a dependent power, is ordinarily also revoked.

The physician was not the agent or deputy of the inspectors, but the agent of the state. In a certain sense the state authorized the inspectors to fill an agency created by the state, which appointment it ratified, and which agent the state recognized and paid him a salary. If this was a case where a principal had conferred upon a board the power of *appointing* an agent for him, and the board had delegated *the appointing power* to some one else, then the revocation of the appointing power of the board would annul the appointing power of the agent. If the state had appointed the board of inspectors to perform the duties of physician, and the board had employed the relator as deputy to assist it in the performance of the functions of the office, then the rule of agency cited by the court would apply, and the revocation of the powers of the inspectors would do away with all assistants and deputies. But can it be urged that when the power of appointment and removal was vested in the inspectors, and in the exercise of this power of appointment the relator was appointed, therefore when the appointing power was transferred from the board to the governor, that which they had rightfully done was annulled? We can hardly think the court will say that the board no longer has authority to appoint, and for that reason that which they were empowered to do is undone, or in other words, the board has no longer any power to remove the relator, therefore the relator is removed. Even though the appointing power was completely abrogated, instead of transferred to the governor, still we think the relator would hold until his successor was selected and qualified.

Is this case distinguishable in principle from *State, ex rel. Davis, v. Bacon*, 6 Neb., 285? Did not the decision

of the court in that case clearly recognize the validity of
Bacon's title to the office of principal of the blind asy-
lum? If so, and the determination of the existence of
the trustees of the blind asylum left its appointees in
office, why should the death of the board of inspectors
nullify its appointments? Each of the boards have the
same power of appointment and removal. For the
power to appoint, for an undefined term, in the absence
of a statute to the contrary, gives the power to remove
at the discretion and will of the appointing power. *Ex
parte Hennen*, 13 Peters, 135. *State v. Bays*, 6 Neb.,
167. If the theory enunciated by the court be correct,
all the appointees of the directors of the deaf and
dumb asylum, the appointees of the board of trustees of
the blind asylum, and the other appointees of the in-
spectors of the penitentiary, have no title to their
positions, and have been enjoying the emoluments of
their offices and places without any legal right thereto.
In conclusion, with all due regard for the opinion of the
court, we are constrained to urge, that the death of the
board of inspectors did not kill off its lawful progeny.


MAXWELL, J.

This is an application for leave to file a motion for
a rehearing, assigning various grounds therefor, only
two of which will be noticed.

The application is made by the attorneys of the re-
lator, and, in support of the application, we are referred
to section 5, Art. XVI, of the Constitution, which pro-
vides that "all persons now filling any office, or appoint-
ment, shall continue in the exercise of the duties thereof,
*according* to their respective commissions, elections, or
appointments, unless by this constitution it is otherwise
directed."

There is no claim that the relator was appointed for a

definite period of time, and the decision in the case is placed expressly on the ground that he merely held his office during the pleasure of the board of prison inspectors. Had the statute prescribed the length of time a party appointed prison physician should hold the office, and that period had not elapsed, the sections cited would be in point. But it has no application whatever to this case.

Section 14, Art. XVI, applies only to the officers named in that section, and has no application whatever to the case of the relator.

The general rule is, that where the term of a particular officer is fixed by statute, his power ceases with the expiration of that term, unless there is a provision that he shall hold his office until his successor is elected and qualified. *Rex v. Atkins,* 3 Mod., 12. *Rex v. Earle,* 1 Strange, 627. *Fort v. Prouse,* Id., 625. *Mayor of Durham's Case,* 1 Sid., 33. Willc., 292. Glover, 173. Dillon on Mun. Corp., Sec. 156.

But where the practice has been for officers to hold over until their successors were elected and qualified, their acts are valid. *Chandler v. Bradish,* 23 Vt., 416. *Overseers v. Sears,* 22 Pick., 122. *School District v. Atherton,* 12 Met., 105. *Dow v. Bullock,* 13 Gray, 136. *People v. Fairbury,* 51 Ill., 149. *McCall v. Byram,* 6 Conn., 428.

An appointment unlimited as to its term continues in force until revoked, or the authority by which it was made ceases to exist. The death or removal of members of a particular board who are vested with the appointing power, their places being filled by others, does not annul appointments already made; because the board continues to exist, with full power to make or revoke appointments, although its members have changed. But upon the abolition of the board, without a saving clause as to its appointments, the authority of those

6

persons, who merely held office during its pleasure, ceases.

The attorneys for the relator endeavor to avoid this dilemma by insisting that he holds over until his successor is appointed and has qualified.

But the statute does not include the case at bar, and the authorities cited do not apply. It is apparent, after a careful re-examination of the case, that all the questions involved have been fully and fairly considered. The application to file a motion for a rehearing is therefore denied.

JUDGMENT ACCORDINGLY.